HANSEN, Circuit Judge,
concurring in part and dissenting in part.
I readily concur with Part I of the opinion of the court and with those portions of Part II which declare the labeling provisions (§§ 17, 18, and 19) of the Missouri Amendment to be in violation of the Constitution. I write separately, however, specifically to assert my view that §§15 and 16 of the Missouri Amendment are severable pursuant to § 22 of the Amendment and are not independently unconstitutional under the court’s reasoning in Part II. Because I believe §§ 15 and 16 remain legitimate political expressions of the citizens of Missouri, I must respectfully dissent from that portion of the court’s opinion and judgment which sweeps away the entirety of the Missouri Amendment.
In Miller v. Moore, 169 F.3d 1119, 1126 (8th Cir.1999), this court recently held, while striking down several sections of a similar Nebraska term limits amendment, that the section declaring the official position of the citizens of Nebraska to be that their elected officials should enact a term limits amendment was severable and constitutional. The principle established in Miller v. Moore is equally applicable to the Missouri Amendment at issue in this case. Standing alone, §§15 and 16 are a legitimate, nonbinding form of political expres *927 sion by the citizens of Missouri explaining their support for a specific term limits amendment to the United States Constitution.
The opinion of the court suggests that §§ 15 and 16 standing alone violate Article V and Article I of the federal Constitution because they are, respectively, “a direct attempt by the people to amend the U.S. Constitution” and “an attempt by the State and people of Missouri to add a qualification to Article I.” See supra at 926 n. 12. With respect to the latter, I believe the people of Missouri indeed have the absolute right under Article V to propose in a public pronouncement an addition to or an alteration of the qualifications for congressional service found in Article I. Once §§ 17 through 19 are struck down, §§ 15 and 16 do not in any way add to or alter the current qualifications for Missouri’s congressional delegation, nor do they affect in any way federal election procedures. Furthermore, § 15 could not be more explicit when it states that the purpose of the voter-approved initiative is to “lead to the adoption of the following U.S. Constitutional Amendment.” Therefore, I see nothing unconstitutional about these efforts (§§ 15 and 16) by the people of Missouri to secure an amendment to Article I through the Article V process, and nothing in the decision in U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995), suggests otherwise.
With respect to Article V, the “people” (that is, the citizenry) have more than “a limited, third party role in the amendment process.” See supra at 924. In fact, ‘We the People” have at least as important a role in the process of amending the Constitution as they did in creating it. It was, after all, the “people” who forced the first ten amendments to be adopted. As the court correctly points out, the people have no formal role in the amendment proce-dieres set out in Article V. However, the people play a crucial, substantive role in the amendment process by bringing political pressure to bear — through political speech, mobilization, and other activities— on those who under the Constitution do control the formal procedures. Standing alone, §§ 15 and 16 are nothing more than the people of the state of Missouri exercising their political right to petition their elected representatives to enact a term limits amendment to the Constitution. The only “coercion” involved in this form of political expression is ordinary garden-variety political pressure, which certainly is not prohibited by the Constitution. Nothing in §§ 15 and 16 restricts the formal amendment procedures of Article V, and thus they should not be held to violate the Constitution.
I know of no precedent that prohibits the people of a state from expressing their political views through amendments to their state constitution, even if that expression involves matters of interest to or under the control of federal legislators, so long as the amendment is advisory and does not coerce elected officials into acting a certain way. See Kimble v. Swackhamer, 439 U.S. 1385, 1387-88, 99 S.Ct. 51, 58 L.Ed.2d 225 (1978) (Rehnquist, Circuit Justice). The court’s opinion attempts to distinguish the principle in Kimble by arguing that the Missouri Amendment contains no specific language making it clear that it does not bind representatives. Whether the Amendment specifically states that it is nonbinding or not, the effect is the same — it is nonbinding. Once the labeling provisions found in §§17 through 19 are struck down, there are no longer any improper penalties imposed on elected officials and there is no longer an enforcement mechanism other than through the basic political process. It is true that §§ 15 and 16 still may be politically persuasive because they represent the views of a majority of the voters who voted on the issue. Because §§ 15 and 16 standing alone are not binding, however, they are not unconstitutional and should be allowed to stand as a democratically determined expression of the political will of the people of Missouri.
*928 Finally, I see no reason why upholding §§ 15 and 16 is improper federal court micro-management of the Missouri Constitution. At most, the last clause of § 16 may be superfluous, but superfluity does not equal unconstitutionality. Nothing remaining in § 16 is unconstitutional, and I think the entire section could remain without severing any part of it. Furthermore, out of respect for the people of Missouri and their Missouri Constitution, I believe we become less entangled in state law issues by striking down only those portions of the Missouri Amendment that are clearly unconstitutional.
Accordingly, I respectfully dissent from that portion of the court’s opinion that strikes down §§15 and 16 of the Missouri Amendment.